IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MARIO ROMOAN SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 317-017 |
| | ) | |
| GLYNN POWELL, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

*Pro se* Plaintiff, a former inmate at Wheeler Correctional Facility ("WCF"), commenced this case alleging Defendant Powell labeled him a snitch in retaliation for Plaintiff filing grievances against him, causing fellow inmate Toranio Lockett to attack him.  (Doc. no. 10.) Before the Court is Defendant's motion for summary judgment.  (Doc. no. 43.)  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion for summary judgment be **GRANTED** (id.), this case be **DISMISSED**, and this civil action be **CLOSED**.

I.      **FACTS**

A.      **Plaintiff's Version of the Facts**

In February 2017, inmate Toranio Lockett attacked Plaintiff in the B hallway outside the chow hall.  (Sullivan Aff., doc. no. 47, pp. 1-2.)  As Lockett approached Plaintiff, he claimed Defendant Glynn Powell accused Plaintiff of writing a statement about Lockett having a shank.  (Id. at 2.)  Indeed, prior to the attack, inmates Ray Williams, Jerry Kelly,

and one known only as "X" warned Plaintiff that Lockett was angry with him because of the purported statement.  (Id.)  Plaintiff, however, never wrote a statement concerning Lockett. (Id.)

A few months prior to the attack, Plaintiff submitted a grievance in which he named Defendant as one of the parties responsible for the leaky roof inside Defendant's unit.  (Id. at 3; doc. no. 46, p. 18.)  Plaintiff asked no one retaliate against him for filing the grievance, particularly those named within the grievance.  (Id.)  Nevertheless, Defendant Powell falsely told Lockett that Plaintiff had written the statement.  (Sullivan Aff., p. 3.)

As a result of the attack, Plaintiff alleges he suffered herniated disks, severe nerve damage, paranoid personality disorder, and insomnia, "among a variety of other things." (Id.)

### B.    Defendant's Version of the Facts

Defendant does not dispute Plaintiff was in an altercation with Lockett, although medical records indicate the attack occurred on January 31, 2017 rather than in February 2017.  (Powell Decl., doc. no. 43, pp. 11-13, ¶ 5; doc. no. 43, p. 36.)  However, Defendant denies any knowledge prior to the altercation of Plaintiff;'s statement concerning Lockett's possession of the shank, Lockett's intention to assault Plaintiff, or any dispute between Plaintiff and Lockett.  (Powell Decl., ¶¶ 4, 6.)  Plaintiff never mentioned the dispute to Defendant nor requested protective custody from Lockett.  (Id., ¶ 7.)

### C.    Plaintiff's Grievance History

According to Plaintiff's Offender Grievance History from the Georgia Department of

Corrections, Plaintiff filed two grievances between January 2017 and his transfer from WCF. (Doc. no. 46, p. 36.)  Plaintiff filed grievance 239703 on March 20, 2017, complaining of failure to transfer him to a vegan approved facility and the allegedly unprofessional actions of Contract Monitor J. Burnette.  (Id. at 14, 36.)  Plaintiff filed grievance 239684 on March 22, 2017, complaining Nurse Tanner and Officer Kemp were refusing to give him prescribed medication.  (Id. at 3-13.)  Plaintiff filed no other grievances during this time period.  (Id. at 36.)

II.    DISCUSSION

A.  Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its

burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991)

(explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett,

477 U.S. 317 (1986)).

   If the moving party carries the initial burden, then the burden shifts to the non-moving

party "to demonstrate that there is indeed a material issue of fact that precludes summary

judgment."  Id. at 608.  The non-moving party cannot carry its burden by relying on the

pleadings or by repeating conclusory allegations contained in the complaint.  Morris v. Ross,

663 F.2d 1032, 1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by

affidavits or as otherwise provided in Fed. R. Civ. P. 56.  "The evidence of the non-movant is

to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A

genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Id. at 248.

   **B.     Exhaustion Standard**

   Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o

action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison or other correctional facility

until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for

prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).

Moreover, the Court does not have discretion to waive the requirement, even if it can be

4

shown the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims.  Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1]  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

---

[1]Other federal circuits have similarly held the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending.  See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

### C.     The Administrative Grievance Procedure

Based on the dates of the alleged incidents, the applicable administrative grievance procedure is the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015.  Ludy v. Morris, CV 316-065, doc. no. 49-3, Attch. 1 (May 22, 2017) (hereinafter "SOP IIB05-0001"); see also Strole v. Coats, No. 8:05CV278T30TGW, 2005 WL 1668900, at *3 (M.D. Fla. July 11, 2005) (taking judicial notice of grievance procedure from prior case).  The administrative remedies procedure commences with the filing of a grievance with the inmate's counselor.  SOP IIB05-0001 § VI(D)(1)-(3).  The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § VI(D)(4).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  See id. § VI(D)(5)(b)(2).

An inmate is limited to two active grievances.  Id. § VI(B)(5)(a).  In order to file a new grievance while he has two pending, an inmate must drop one of the outstanding grievances.  Id. § VI(B)(5)(a)(1).  If an offender does not want to drop one of his outstanding grievances, the third grievance will not be processed.  Id.  The following three types of grievances do not count toward two grievance limit: (1) emergency grievances; (2) grievances that involve allegations of physical abuse with significant injury to the inmate or sexual assault; and (3) grievances that the Grievance Coordinator determines involves an important issue of prison security or administration, such as a serious threat to life, health, or safety of any person.  Id. § VI(B)(5)(b).

The inmate's counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it or recommend the Warden reject it.  Id. § VI(D)(3), (5)(a).  The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision, but a onetime ten calendar day extension may be granted.  Id. § VI(D)(7).  If the inmate is not satisfied with the Warden's response to the grievance, he has seven calendar days from the receipt of the response to file an appeal to the Central Office of the Commissioner; the Office of the Commissioner or his designee has one hundred calendar days after receipt of the grievance appeal to respond.  Id. § VI(E)(2), (7).  The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office or the expiration of the one hundred day time period.  See id. § VI(E).

**D.    Plaintiff Failed to Exhaust His Claims.**

Plaintiff filed two grievances between January 2017 and his transfer from WCF.  (Doc. no. 46, p. 36.)  In grievance 239703, Plaintiff complained of failure to transfer him to a vegan approved facility and the allegedly unprofessional actions of Contract Monitor J. Burnette.  (Id. at 14, 36.)   In grievance 239684, Plaintiff complained Nurse Tanner and Officer Kemps refused to provide him with his prescribed medication.  (Id. at 3-13.)  Neither grievance mentioned Defendant or the attack.

Plaintiff attached to his original complaint two copies of a grievance purportedly filed February 27, 2017, complaining Defendant retaliatorily labeled him a snitch.  (Doc. no. 1, pp. 25-26.)  However, neither copy contains a grievance number or the signature of a prison

official who received it.  (Id.)  Nor does Plaintiff's grievance summary from the Georgia

Department of Corrections indicate this grievance was ever filed.  (Doc. no. 46, p. 36.)

Plaintiff testified during his deposition that he attempted to file the February 27th

grievance, but prison officials refused to accept it because he already had two outstanding

grievances.  (Id. at 80-82); see also SOP IIB05-0001 § VI(B)(5)(a)(1).  Plaintiff further

testified he was aware of this policy, so he made a copy of the grievance and executed a

notarized affidavit of fact, which he gave to Counselor Johnson to place in his file.  (Doc. no.

46, pp. 80-81.)

Plaintiff thus concedes that he did not comply with the procedural requirements of

administrative grievance process because he failed to drop one of his outstanding grievances

to pursue the February 27th grievance against Defendant Powell.  (Id.)  The SOP specifically

provides that an inmate "must drop one of the outstanding active grievances being

processed" if he wishes to pursue a third grievance.  SOP IIB05-0001 § VI(B)(5)(a)(1).  If an

inmate fails to do so, "the third grievance will not be processed."  Id. (emphasis in original).

Despite understanding this rule, Plaintiff attempted to circumvent it by creating an affidavit

of fact and placing it in his file instead of filing a formal grievance and dropping one of his

outstanding grievances.  (Doc. no. 46, pp. 80-81.)

The Supreme Court has explained the rationale behind requiring "proper exhaustion"

as follows:

> The benefits of exhaustion can be realized only if the prison grievance system
> is given a fair opportunity to consider the grievance.  The prison grievance
> system will not have such an opportunity unless the grievant complies with the
> system's critical procedural rules.  A prisoner who does not want to participate

in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds.  We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95.

In sum, the PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances.  Johnson, 418 F.3d at 1159.  Plaintiff concedes that he failed to properly exhaust his available administrative remedies because he attempted to circumvent the SOP rule allowing only two outstanding grievances.  (Doc. no. 45, pp 80-81.)  Accordingly, Plaintiff failed to exhaust his administrative remedies, and Defendant is entitled to summary judgment.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED** (doc. no. 43), this case be

**DISMISSED**, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 6th day of July, 2018, at Augusta,

Georgia.


BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA